U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

OCT 20 2011

DAVID J. MALAND, CLERK
BY_____
DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

IN THE MATTER OF KENT A. ROWALD §                    No.: 5:11-mc-2

## KENT A. ROWALD'S
## RESPONSE TO SHOW CAUSE ORDER

Comes now Kent A. Rowald ("Rowald") and would show as follows:

PetVac Group, LLC (hereinafter referred to as "PetVac") initially attempted to answer the Complaint of FURminator, Inc. ("FURminator") pro se. After having that answer stricken and being told that a default judgment was forthcoming, PetVac contacted the undersigned ("Rowald") to represent them. After PetVac agreed to pay a retainer and enter into an employment contract with Rowald, Rowald did not wait for the retainer to arrive or the signed employment contract, but immediately filed an answer in order to avoid further action toward a default. While the answer was thus "late", it was filed immediately upon an agreement being reached to represent PetVac. Notably the answer was filed before a retainer had been paid an no payment of any kind has been received from PetVac at any time.

With regard to the December 14, 2009 status conference, Rowald informed PetVac that the status conference was approaching, but that payment of the retainer and past due invoices needed to be paid before that date. PetVac promised to make such payments to Rowald, but instructed Rowald not to attend the hearing or incur any costs without prior approval. Despite Rowald advising PetVac that the Court would not be happy with the non-appearance, PetVac reiterated its instruction to not incur any costs, even if that meant not attending the hearing. Rowald acquiesced to PetVac's instructions.

With regard to notifying the Court and FURminator whether PetVac would consent to a trial before the Magistrate Judge, Rowald participated in the agreed Motion for Entry of Docket Control Order and Discovery Order, Docket 29, which expressly contemplates trial before the Court and not a Magistrate Judge.

Regarding the alleged failure to timely serve invalidity contentions, Rowald mailed such invalidity contentions to FURminator's counsel and further emailed them to FURminator's counsel. Because of apparent email issues at the time, they were sent again on March 26, 2010 from a different email address. See the attached copy of that email sans attachments. In short, Rowald made a good faith effort to meet that deadline and, by virtue of recognizing the email and mail issue existed, in fact served such contentions a mere two days late.

With regard to the proposed terms and claim elements for construction, Rowald and PetVac chose to accept the proposed terms and claim constructions that were proposed by FURminator and previously adopted by other courts who had considered such claims. As a result, there was no need for additional proposed terms and claim constructions.

With regard to the allegation that not a single document was produced to FURminator, that allegation is simply untrue. All of the relevant documents which Rowald was able to obtain from PetVac were produced as they were provided to him. Admittedly, those documents were minimal and it was impossible to obtain the types of documents ordinarily available since PetVac maintained those records in The Netherlands and China and in languages other than English. Despite producing everything that he could obtain from PetVac, the Court ordered additional documents be produced on or before June 24, 2010.

On June 24, 2010, all non-privileged documents available to Rowald, including without limitation photographs of the accused tool in both assembled and disassembled form, a pending

patent application relating to the accused device and the publicly available patent applications that PetVac had on file were produced. Moreover, the specific business records relating to the number of tools sold and the revenues therefrom were proffered as they are kept in the ordinary course of business in The Netherlands and China, respectively, as well as English language summaries that PetVac was preparing. Summaries of those documents, which FURminator relied upon in forming its damage model, were subsequently provided to FURminator when they were produced by PetVac. From PetVac's Opposition to the Second Motion to strike, it is clear that at 5:35 pm on June 15, 2010, the day supplementation was ordered to occur, an email was sent to Plaintiff's counsel informing him that responsive documents were not available beyond those that had already been produced, but a third party, namely PetVac's Chinese manufacturer and PetVac's U.S. warehouse had both been contacted about pertinent documents that they may have so that copies could be obtained in order to supplement the record. See Exhibit A to that response.

As noted in the June 15 email, the Chinese manufacturer had indicated that information for US shipments could be extracted from European shipments and that the information would be available "in about a week". The information was obtained by PetVac's counsel on June 22. Those documents were burned to a CD and supplementation was sent to Plaintiff's counsel on that day via first class mail. See Exhibit B to the Opposition.

As is readily apparent, the Court's order to supplement or indicate that there were no additional documents on or before June 15, 2010 was complied with by PetVac. Moreover, immediately upon receipt of the supplemental documents from PetVac's Chinese manufacturer and the information from PetVac's U.S. warehouseman, those documents were immediately forwarded to Plaintiff's counsel. Thus, the statements reflecting Furminator's complaints are

simply not based on factually accurate information. PetVac and Rowald complied with discovery requests and produced the available documents.[1]

That brings us to the allegedly "fraudulent" June 15, 2010 email. On that date, Rowald wrote an email to FURminator's counsel. Rowald believed that such email had been sent and relied upon it in responding to FURminator's motion for sanctions. Notably, Rowald indicated in his statement to the Court that the email was not in his inbox as would usually be expected, but given the potential that a bcc address might not have been added, it was not a red flag. Thus, the email was pulled from Rowald's "Sent" folder and printed. It was only later that it was determined that the email was apparently not received by FURminator. A subsequent to a review of Rowald's google mail account reflected that, despite Rowald's good faith belief that the email had been sent, it was not received by Google's email system.

Given the severity of the allegations of "fraudulent" email (the copy that was printed and then scanned is, at best, admittedly a bad copy), Rowald had set aside the laptop on which the email was present in order to preserve the evidence. Unfortunately, some time between Friday, August 9, 2010, when Rowald left his office to attend a parade in Tomball, Texas and Monday, August 9, 2010, when he arrived at his office, the office was subject to an apparent break-in in which the laptop computer and a clock radio were taken. That break-in was immediately

---

[1] For the sake of completeness, it is also noted that the initial disclosures indicated that PetVac's records in the categories set forth are maintained in PetVac's corporate office in Amsterdam, The Netherlands. As noted in both the June 15 email and the June 22 letter, it was determined that those records aggregate U.S. sales with all other sales worldwide such that it is not believed possible to determine from those records what sales were made in the U.S. and what sales were made elsewhere. The supplementation from the third party sources allows the parties to determine what sales were made in the U.S., which is what is relevant to this case.

reported to the appropriate police authorities and notice was immediately given to the Court. That laptop has not to date, to the best of my knowledge, been recovered.

FURminator's motion for contempt and to compel compliance with a subpoena seeking ALL of the undersigned's emails, regardless of to whom or from whom they were sent, was certainly opposed. As explained to Judge Hoyt, I had no objection to cooperating with a narrowly tailored request for the email records from Google (the host for my email), but the overbroad requests clearly delved into records relating to other clients and unrelated matters. They were and are, therefore, protected by the attorney-client privilege. Notably, I cannot and did not waive such privilege, but executed the request to Google under court order to do so in order to insure that there was no question the privilege had not been waived.

Thereafter, Google produced the overly expansive requested documents and FURminator pursued yet another motion for sanctions, relying in part on the privileged information to which they were not entitled. At the express direction of my client, I did not attend that hearing even though the client was aware that a default judgment would be the likely result.

As noted, I submitted an email which I in good faith believed had been sent. That belief was later shown to be incorrect, in that it was drafted but apparently NOT sent to my email provider. I do not know how the email was thus in my sent box rather than my draft box in my email account. I can only surmise that I hit send, my Outlook program endeavored to send the email and moved the email to my sent box, but the email was for some reason not transmitted from my laptop to my email server at Google.

WHEREFORE, Kent A. Rowald prays that the sanctions already entered against him be determined to be more than sufficient to encourage greater care in relying upon email communications.

Dated: October 17, 2011                    Respectfully submitted,

                                               /s/Kent A. Rowald/s/
Kent A. Rowald
State Bar No. 17329300
LAW OFFICES OF KENT A. ROWALD, P.C.
20333 State Hwy 249
Suite 200
Houston, Texas 77070
Telephone: (281) 516-3844
Facsimile: (281) 516-3845
krowald@patentlawyers.com